DowNey, Judge-,
delivered the opinion of the court.
The plaintiff was the owner of 500 reels of galvanized barbed wire, which was in storage when, in July, 1918, the United States took it over for governmental purposes and shipped it to France. It had been purchased by the plaintiff, who was a large general exporter, for the purpose of export to Singapore, on order, and the plaintiff had paid therefor, in June, 1918, $2,058.
The duly authorized representative of the United States, by whose direction the wire had been taken over, tendered to the plaintiff a voucher on the basis of $5.35 per hundred pounds, which the plaintiff refused to accept and insisted that it should be compensated on the basis of $7.50 per hundred pounds, which was the price it had paid for the wire, and its fair value in export market. The procurement officer being unwilling to pay this price for the wire, which Avas in excess of the price the Government had been paying for such wire, indicated to the plaintiff that in lieu of payment he would replace, the wire in kind, and to this the plaintiff consented. The Government authorities Avere expecting the arrival at Jersey City at an early date of a large quantity of barbed wire purchased from a factory and which the procurement officer understood Avould be gaUanized wire. He therefore directed that 500 reels of such wire should be de-lrvered to the plaintiff, and the plaintiff in that connection gave directions that upon its arrival it should be shipped to Chicago in its name in care of an export forwarder, and when this consignment of Avire arrived 500 reels thereof were so shipped, and were by the forwarding agent at Chicago re-sliipped to Singapore.
Neither the Government’s representative nor the plaintiff knew that this wire was other than it was expected to be until after its arrival at Singapore, when it was found to be black wire asphaltum dipped, but not galvanized. "When the wire was reshipped from Jersey City, according to the *677 shipping instructions given by the plaintiff, a railroad bill of lading was duly issued and within a day or two the plaintiff was notified that the wire had been shipped, the bill of lading was inclosed and also a packing list, in which the wire was referred to as “ dipped in plain asphaltum paint.” What, if any, attention the plaintiff paid to this description does not very fully appear, but it is quite apparent that if any attention was given to it, it was not taken as indicating that the wire was not galvanized, and indeed the Government officer in charge, when he learned that this consignment of wire which yas received at Jersey City was asphal-tum dipped, assumed that it was galvanized wire dipped in black asphaltum to remove the reflection of .the sunlight Avhen in use in the field. But however this may be, it appears that it was not discovered by either party to the transaction until after the arrival of the wire at Singapore that it was not galvanized, and being unsuitable for use in that climate unless galvanized, plaintiff’s customer refused to accept it.
The plaintiff being informed by its representative at Singapore of the facts as stated with reference to the wire, at once notified the Government officer in charge, stating that the Avire was held in storage at Singapore for the account of the United States, and Avas directed by the officer to sell the wire for the best obtainable price and file a claim, which it did. Plaintiff had to pay large transportation charges on the arrival of the wire at Singapore, and received as proceeds of this sale something less than its expenditures in that behalf.
The statement of the case indicates clearly that, in the first instance, there Avas a taking of plaintiff’s property by the United States for governmental purposes, Avhich entitled the plaintiff to just compensation therefor. The compensation tendered being unsatisfactory on the one hand and the demand on the other, the United States agreed to make compensation to the plaintiff by replacing the wire in kind, Avhich Avas acceptable to the plaintiff and which the representative of the United States undertook to do but in Avhich lie, through no fault on his part or upon the part of the plaintiff, failed to do.
*678 Assuming in the first instance that .the plaintiff is entitled to compensation for the wire taken, measured by its fair value*, there would properly be for credit as against that amount anything which the plaintiff received through the sale of the wire actually delivered, but the facts are that the amount received by the plaintiff as proceeds of the sale of the wire shipped to Singapore was less than the amount of transportation charges paid by the plaintiff, so that there would seem to be no basis for any credit as against the amount determined to be just compensation for the wire taken.
On the other hand, while the plaintiff seeks to recover not only the value of the wire taken, but all expenses to which it was subjected on account of the mistake made, we are unable to find any basis for recovery on the part of the plaintiff aside from what may be determined to be just compensation for the wire taken.
It is shown that the plaintiff was a large exporter and that this wire had been purchased by it for export upon order, and that for export purposes it was worth the price paid by the plaintiff therefor.
Just compensation now made should include interest as a part thereof, from the time of the taking, and we have directed judgment accordingly.
Judgment for plaintiff in the sum of $2,778.30.
Hat, Judge; Booth, Judge, and Campbell. Chief Justice, concur.